# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GWENDOLYN F.H.,[1] | : | Case No.  3:22-cv-214 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

Plaintiff Gwendolyn F.H., brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #7).

## I.  Background

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits in March 2020, alleging disability due to several impairments, including back, shoulder knee and hip problems, Hashimoto's disease, rheumatoid arthritis, and vertigo. After Plaintiff's application was denied initially and upon reconsideration, she requested and received a telephone hearing before Administrative Law Judge (ALJ) Gregory M. Beatty. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1:     Plaintiff has not engaged in substantial gainful activity since March 27, 2019, the alleged onset date.

Step 2:     Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis, degenerative joint disease of the left knee status post total knee arthroplasty, hernias, Hashimoto's disease, lymphedema, and obesity.

Step 3:     Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:     Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consist of "sedentary work … [ ] with lifting and carrying ten pounds occasionally and less than ten pounds frequently, and she is able to push and pull as much as she can lift and carry. She is able to stand and/or walk for two hours per eight-hour workday and sit for six hours per eight-hour workday. [Plaintiff] is limited to no kneeling or climbing of ladders, ropes, or scaffolds with occasional crouching, crawling, stooping, and climbing of ramps and stairs. She can never work at unprotected

2

heights or around moving mechanical parts, and she avoid concentrated exposure to vibration."

Step 4: Plaintiff is capable of performing past relevant work as an insurance clerk. This work does not require the performance of work-related activities precluded by her RFC.

(Doc. #7-2, *PageID* #s 36-44). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since March 27, 2019. *Id.* at 44.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 33-44), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), and Plaintiff's Reply (Doc. #10). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.    <u>Standard of Review</u>

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision

of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III.   <u>Discussion</u>

On appeal, Plaintiff argues that the ALJ erred in evaluating the prior administrative medical findings of state agency physicians, Leon Hughes, M.D. and W. Scott Bolz, M.D. and the functional capacity assessment of John Accrocco, PT. (Docs. #s 8 and 10). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence. (Doc.# 9).

Since Plaintiff filed her applications after March 27, 2017, they are governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in her case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)– (5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when

considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

*Prior Administrative Medical Findings of Leon Hughes, M.D. and W. Scott Bolz, M.D*

Here, Plaintiff first argues that the ALJ erred in his review of the prior administrative medical findings provided by Drs. Hughes and Bolz under the supportability factor. (Doc. #8, *PageID* # 836-37). Dr. Hughes reviewed Plaintiff's medical records and provided an opinion on her functional limitations in June 2020. (Doc. #7-3, *PageID* #s 129-31). According to Dr. Hughes, Plaintiff suffered from severe impairments, including osteoarthrosis, back disorder, thyroid disorder, hernia, and other unspecified arthropathies. *Id*. at 129. As a result of these impairments,

he opined that Plaintiff could lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally; stand and/or walk about 4 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. *Id.* at 130. He also concluded that Plaintiff could occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs; never climb ladders, ropes, and scaffolds; should avoid concentrated exposure to vibration; and avoid all exposure to hazards such as unprotected heights and heavy moving machinery due to vertigo. *Id*. at 130-31.

Shortly thereafter, in December 2020, Dr. Bolz reviewed the medical evidence and found that it was consistent with Dr. Hughes's exertional and environmental restrictions. (Doc. #7-3, *PageID* #s 137-38). However, Dr. Bolz opined that Plaintiff could never kneel or climb ladders/ropes/scaffold; occasionally crouch, crawl, and climb ramps/stairs; and frequently stoop. *Id.*

Upon his review, ALJ Beatty ultimately found the opinions of Drs. Hughes and Bolz to be "somewhat persuasive" as they were "generally supported by and consistent with the evidence they had available for their review, which reflected relatively good strength and a no more than [a] mild limp[.]" (Doc. #7-2, *PageID* #42). ALJ Beatty did note, however, that "Drs. Hughes and Bolz did not have the entire record available for review when they provided their opinions, and additional evidence, including the total knee arthroplasty with complications of deep vein thrombosis, support further restricting [Plaintiff]." *Id.*

As noted above, Plaintiff contends that the ALJ erred by not following the relatively new regulations regarding the assessment of medical opinions when evaluating the opinions of Drs. Hughes and Bolz. (Doc. #8, *PageID* #s 834-37). Specifically, she points out that the regulations

6

require the ALJ to articulate his consideration of the supportability and consistency factors for each medical opinion and that the ALJ did not discuss the supportability factor. *Id.*

Upon review, the undersigned agrees with Plaintiff's contention that ALJ Beatty conflated the factors of supportability and consistency by stating that the findings of Drs. Hughes and Bolz were "generally supported by and consistent with the evidence they had available for review[.]" (Doc. #7-2, *PageID* #42).  The ALJ went on to specifically note that their opinions were consistent with the records demonstrating Plaintiff's "relatively good strength and no more than [a] mild limp[.]" *Id.*  This analysis, however, fails to address the supportability, *i.e.*, the relevance of the medical evidence and supporting explanations used to support the opined limitations, that Drs. Hughes and Bolz relied upon. *See* 20 C.F.R. § 404.1520c(c)(1).  Thus, while the ALJ used the word "supported" in his analysis, he did actually articulate how the record evidence supported the administrative findings of Drs. Hughes and Bolz.

Significantly, however, the functional limitations that ALJ Beatty ultimately incorporated into Plaintiff's RFC were either consistent with, or more restrictive than, the functional limitations provided by Drs. Hughes and Bolz. (*Compare* Doc. #7-2, *PageID* #42 *with* Doc. #7-3, *PageID* #s 129-31, 137-38). Indeed, while both Drs. Hughes and Bolz found that Plaintiff was capable of a reduced range of light exertional work, ALJ Beatty found that the more recent evidence coupled with Plaintiff's subjective complaints warranted a reduced range of sedentary work. (Doc. #7-2, *PageID* #42).  Accordingly, while the ALJ failed to articulate how he evaluated the supportability of Drs. Hughes and Bolz's opinions, his error was harmless as he ultimately included restrictions in Plaintiff's RFC that were consistent with or greater than the restrictions recommended by Drs.

Hughes and Bolz. *See Putman v. Comm'r of Soc. Sec.*, No. 2:20-CV-3895, 2021 WL 2700330, at *5 (S.D. Ohio July 1, 2021) ("An ALJ does not commit reversible error when discounting a medical opinion or an administrative finding because the ALJ determines that a claimant is more limited than opined."); *see also Mosed v. Comm'r of Soc. Sec.*, No. 2:14–cv–14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) *report and recommendation adopted*, 2016 WL 1084679 ("Plaintiff's argument that the ALJ erred in assessing a more restrictive RFC than that opined by the State agency consultants is curious and unavailing."); s*ee also Jason M. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00272, 2022 WL 4591305, at *7 (S.D. Ohio Sept. 30, 2022) (holding that an ALJ's procedural failure to discuss his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion is harmless error when the ALJ adopted the medical opinion or made findings consistent with the opinion).

For these reasons, Plaintiff's challenge to the ALJ's review of Drs. Hughes and Bolz's findings are without merit.

### Medical Opinion of John Accrocco, PT

Plaintiff also challenges the ALJ's evaluation the opinion provided by her physical therapist, John Accrocco, PT.  (Doc. #8, *PageID* #s 837-39).   Mr. Accrocco evaluated Plaintiff and completed a functional capacity evaluation of her limitations in May 2021. (Doc. #7-7, *PageID* #s 823-26).  In the evaluation, Mr. Accrocco indicated that Plaintiff suffered from low back pain, which resulted in pain, weakness, limited range of motion, balance deficits, being a fall risk, and an unsteady gait. *Id*. As a result of these impairments, he opined that Plaintiff would need five or more unscheduled breaks of at least fifteen minutes each during the workday. *Id*. He also indicated

that Plaintiff would be limited to sitting and standing/walking for less than two hours each per eight-hour workday, noting that this estimate was "per patient." *Id.* According to Mr. Accrocco, Plaintiff was capable of moderate stress – normal work, but she would be off-task 25% or more of the time and would be absent more than four days per month because of her impairments. *Id.*

In reviewing this opinion, ALJ Beatty found Mr. Accrocco's assessment to be "not persuasive," explaining that Mr. Accrocco's opinion "appears to be an uncritical acceptance of [Plaintiff's] subjective complaints, as demonstrated by his note that portions of his opinion were "per patient," and Mr. Accrocco did not otherwise provide an explanation for his 'rather excessive limitations.'" (Doc. #7-2, *PageID* #s 42-43). The ALJ further noted that, "while [Plaintiff] did present with some limitations on her physical therapy evaluation, the totality of the evidence demonstrated better functioning than her performance at the evaluation." *Id.* at 43. As examples of this discrepancy, ALJ Beatty pointed to treatment notes demonstrating that Plaintiff's "reduced strength in the upper extremities, which is not consistent with the strength rating or lifting difficulties reported by Mr. Accrocco[.]" *Id.* (citing Doc. #7-7, *PageID* #s 340-829). Thus, he concluded that, "[t]he totality of the evidence in the record supports better functioning than opined, and the longitudinal record does not support the time off-task, absenteeism, and sitting limitations in Mr. Accrocco's opinion." *Id.*

ALJ Beatty's explanation for finding Mr. Accrocco's opinion unpersuasive is sufficient. ALJ Beatty specifically discussed the two most important factors listed in 20 C.F.R. § 404.1520c—supportability and consistency. As for supportability, ALJ Beatty pointed out that Mr. Accrocco's opinion "appears to be an uncritical acceptance of [Plaintiff's] subjective complaints, as

demonstrated by his note that portions of his opinion were "per patient," and Mr. Accrocco did not otherwise provide an explanation for his 'rather excessive limitations.'" (Doc. #7-2, *PageID* #s 42-43). Thus, his analysis specifically addressed the evidence (or, in this case, the lack thereof) that Mr. Accrocco used to support his recommendations. *See* 20 C.F.R. § 404.1520c(c)(1) (defining "supportability" as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be."). Here, Plaintiff points to Mr. Accrocco's documentation of her symptoms, including pain, weakness, limited range of motion, balance deficits, fall risk, and unsteady gait as objective evidence from Mr. Accrocco's examination that support his findings. (Doc. #8, *PageID* #837). What Plaintiff misses, however, is that Mr. Accrocco did not explain why these symptoms resulted in findings that Plaintiff would need five or more unscheduled breaks during a workday, be off task for 25% or more of the time, and be absent more than four days per month. The ALJ noted the absence of such explanations in his assessment of the supportability of Mr. Accrocco's opinion and reduced the weight of his opinion accordingly. This is a reasonable assessment of Mr. Accrocco's opinion under the supportability factor and will not be disturbed by this Court.

As for the consistency factor, the ALJ pointed out that Mr. Accrocco's opinion was also inconsistent with the record. (Doc. #7-2, *PageID* #43). Here, he noted that the treatment records demonstrated better functioning than what was recorded during Mr. Accrocco's examination. *Id.* As an example, ALJ Beatty specifically noted that the treatment records showed functioning in her upper extremities that was not consistent with Mr. Accrocco's recommendations on Plaintiff's

strength rating and lifting difficulties. *Id*. Thus, the ALJ also appropriately considered the consistency of Mr. Accrocco's findings with the other objective medical evidence of record. 20 C.F.R. § 404.1520c(c)(2) (defining "consistency" as "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)… will be."). In short, the ALJ clearly satisfied the articulation requirements and was not required to discuss any other factor. *See* 20 C.F.R. § 404.1520c(b)(2) (requiring only that the ALJ articulate how he considered the supportability and consistency factors).

For all the foregoing reasons, Plaintiff's Statement of Errors is without merit.

## **IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #8) is **DENIED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the Court's docket.

September 7, 2023                                   *s/Peter B. Silvain, Jr.*
                                                    Peter B. Silvain, Jr.
                                                    United States Magistrate Judge